IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **HENRY L. MACK, # B-53412,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 14-cv-928-MJR |
| ) | |
| **WARDEN HERRINGTON,** ) | |
| **OFFICER QUALL,** ) | |
| **WARDEN WILLIAMS,** ) | |
| **M. OLSON,** ) | |
| **DOCTOR BAKER,** ) | |
| **and MILLS,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff is an inmate of the Illinois Department of Corrections. He had been incarcerated at Western Illinois Correctional Center ("Western") until a recent temporary transfer to Dixon Correctional Center (Doc. 6). He brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, complaining of constitutional violations that occurred during his prior incarceration at Menard Correctional Center ("Menard"), as well as other violations occurring at Western. Plaintiff is serving three ten-year sentences for sexual assault. His Menard claims concern deprivation of legal documents relating to Plaintiff's criminal case as well as a pending civil case. The claims against prison officials at Western assert retaliation and deliberate indifference to a serious medical condition.

Plaintiff has organized the factual allegations of his complaint into three sections, labeled as "Claims I-III." Each set of claims is summarized below.

**Claim I**

This claim is against Menard Defendants Herrington and Quall. On February 12, 2013, Plaintiff was due to be transferred from Menard on a court writ to Stateville Correctional Center ("Stateville") (Doc. 1, p. 4). He was taken to the personal property office at Menard to have his belongings stored until his return, and also to review the "writ property" items (legal documents) which were to be sent along with him to Stateville. Menard was on lockdown at the time, so Plaintiff's hands were cuffed behind his back during this movement.

Defendant Quall was on duty at the property office, and presented Plaintiff with an inventory sheet of the personal property that was going to storage. Plaintiff told him that the inventory was correct, and Defendant Quall told Plaintiff to sign the document. Plaintiff was unable to do so with his hands cuffed, so Defendant Quall signed Plaintiff's name for him. Plaintiff objected, saying, "I don't approve of people signing my name" (Doc. 1 p. 5). This infuriated Defendant Quall, who responded, "F**k it then, your property just won't go with you then." *Id*.

After arriving at Stateville, Plaintiff discovered that in fact none of his writ property was sent there with him. Moreover, when he returned to Menard on February 27, 2013, and retrieved his other stored property, the writ property was not there (Doc. 1, p. 6). Defendant Quall laughed when Plaintiff asked him about the writ items. None of that writ material has ever been found in the 17 months since the incident. The missing items included "urgent, irreplaceable legal documents" relating to Plaintiff's criminal and civil cases, including witness affidavits Plaintiff needs for his post-conviction case. He asserts those documents are critical because neither witness is now willing to cooperate with him. The property also included copies of "grievances that went missing while in the care of Menard C. C. counselors, which led to

[Plaintiff] losing a *Pavey* hearing" in his previous case now pending in this Court, *Mack v. Fahim*, Case No. 12-cv-986-MJR-SCW.[1]

Plaintiff filed a grievance over Defendant Quall's conduct, which he also forwarded to Defendant Warden Herrington. He never got a response, and was transferred to Western on March 6, 2013. In addition, Plaintiff complains that Defendant Herrington failed to notify "proper authorities" or initiate a criminal investigation over Defendant Quall's forgery of Plaintiff's signature on the property inventory sheet (Doc. 1, p. 8).

### Claim II

The remaining events outlined in the statement of claim all occurred at Western Illinois Correctional Center (Doc. 1, pp. 9-20). First, Defendant Olson (Library Clerk) discarded the response Plaintiff had prepared to the pending motion for summary judgment filed by the defendants in Case No. 12-cv-986-MJR-SCW. Plaintiff then had to re-draft the entire document, without the exhibits he planned to submit, because the first set of papers he mailed to Defendant Olson for filing contained his only originals (Doc. 1, p. 10). She filed the second response for him on April 15, 2013, but refused to include a page on which Plaintiff described her conduct in discarding the original response and exhibits.[2] Plaintiff asserts that Defendant Olson's conduct was in retaliation for his activity of filing suit against her fellow IDOC co-workers.

### Claim III

Plaintiff's final claim is against Western Defendants Doctor Baker and Nurse

---

[1] The undersigned Judge dismissed three Defendants (Forsting, Scott, and Reinhold) without prejudice from Case No. 12-cv-986-MJR-SCW, upon finding that Plaintiff failed to exhaust his administrative remedies against them by filing grievances at Menard (Doc. 88 in Case No. 12-cv-986, March 6, 2014).

[2] Plaintiff's response to the summary judgment motion was docketed as Doc. 64 in *Mack v. Fahim*, Case No. 12-cv-986-MJR-SCW. He later filed in that case a copy of his grievance over Defendant Olson's omission of the page complaining about her, as Doc. 65.

Practitioner Mills, for failing to treat and delaying treatment of a recurring ear infection (Doc. 1, pp. 12-13, 15-16, 18), and failing to treat his diverticulosis and bloody stool (Doc. 1, pp. 14, 17-20).  In addition to displaying deliberate indifference to Plaintiff's serious medical conditions, he alleges that these Defendants' refusal to address his bloody stool condition was in retaliation for the fact he had sued several Menard employees and health professionals over failing to treat that same medical problem (Doc. 1, pp. 19-20).[3]  Plaintiff observed Defendant Baker reading legal documents relating to that earlier lawsuit which were contained in Plaintiff's medical file.

Finally, Plaintiff includes Defendant Williams (Warden at Western) in both Claim II and Claim III, because he failed to intervene after receiving emergency grievances over the lack of medical care, as well as the actions of Defendant Olson.

**Severance of Claims Against Western Correctional Center Defendants**

At the outset, it is clear from the complaint that Plaintiff has improperly joined two sets of claims that belong in separate lawsuits.  In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate actions, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George*, 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)).  Plaintiff's complaint contains two distinct sets of claims against different defendants:  (1) "Claim I" against Menard Defendants Quall and Herrington regarding the deprivation and destruction of Plaintiff's legal documents (Doc. 1, pp. 4-8); and (2) "Claim II" against Western Defendants Olson and Williams for retaliation (Doc. 1, pp. 9-11) and "Claim III" against Western Defendants Baker, Mills, and Williams for deliberate indifference to medical needs and for retaliation (Doc. 1, pp.

---

[3] The bloody stool condition was one issue raised in Plaintiff's complaint claiming deliberate indifference to medical needs in *Mack v. Fahim*, Case No. 12-cv-986-MJR-SCW, still pending before the undersigned Judge.

12-20). The events underlying Claim I, which arose in Menard, are factually and legally unrelated to the matters raised in Claims II and III, which arose in Western. Claim I involves different Defendants from the parties named in Claims II and III. While Plaintiff raises retaliation claims against both Menard and Western Defendants, the acts of retaliation, as well as the individual Defendants, are distinct and are not properly joined in the same suit.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Claims II and III of Plaintiff's complaint, and shall open a single new case with a newly-assigned case number, in which Plaintiff may proceed on his claims against the Western Defendants. However, Plaintiff shall have an opportunity to voluntarily dismiss the newly severed case if he does not wish to proceed on those claims or incur the additional filing fee.

If Plaintiff does not voluntarily dismiss the severed case, that case shall be transferred to the United States District Court for the Central District of Illinois for a determination of whether Plaintiff shall be granted leave to proceed in that action in *forma pauperis*, and for a merits review of his claims pursuant to 28 U.S.C. § 1915A. The reason for the anticipated transfer is that Western is located in Brown County, within the geographical boundaries of the Central District. The Court finds it appropriate for Plaintiff's severed claims to be adjudicated in the district where they arose, as well as where those Defendants are located. *See* 28 U.S.C. § 93(c); 28 U.S.C. § 1391(b); 28 U.S.C. § 1404(a).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Because Claims II and III shall be severed into a separate case, the Court's merits review of the complaint shall be limited to an examination of Claim I against Menard Defendants Herrington and Quall.

Under § 1915A, the Court is required to conduct a prompt threshold review of the

complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated two colorable federal causes of action against Defendant Quall:

**Count 1:** Claim for denial of access to the courts, where Plaintiff alleges that the loss of his copies of grievances and witness affidavits caused his claims against some Defendants in Case No. 12-cv-986-MJR-SCW to be dismissed, and impaired his ability to pursue his post-conviction case; and

**Count 2:** Retaliation claim, where Defendant Quall withheld Plaintiff's documents from being transferred with him for the court writ, and then destroyed the documents, because Plaintiff complained about Defendant Quall signing Plaintiff's name without permission.

However, Plaintiff's allegations fail to state any constitutional claim upon which relief may be granted against Defendant Herrington in connection with Counts 1 or 2 above. He also fails to state a claim against Defendant Herrington for failing to take action over Defendant Quall's "forgery" of Plaintiff's signature, or for failing to respond to Plaintiff's grievances. Defendant Herrington shall thus be dismissed from the action.

Furthermore, to the extent that Plaintiff might be seeking compensation for the mere monetary value of any of his legal property that was lost/destroyed by Defendant Quall, such an action belongs in the Illinois Court of Claims. Plaintiff has the right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. However, such a claim cannot be brought in federal court, because the process afforded by the state in the Court of Claims to seek monetary damages provides an adequate remedy to satisfy due process concerns. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Where the state provides an adequate remedy, Plaintiff has no federal civil rights claim.

*Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).

**Dismissal of Defendant Herrington**

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (internal quotations and citations omitted). Based on the facts as described in Plaintiff's complaint, Defendant Herrington had no direct involvement in the incident between Plaintiff and Defendant Quall. He learned about it only later, through Plaintiff's grievance. A prison official's role in responding to a grievance does not lead to any liability for the conduct which gave rise to the grievance. *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). Furthermore, the failure to respond to a grievance, or any other alleged mishandling of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Finally, Defendant Herrington cannot be held liable for any unconstitutional conduct of Defendant Quall on the basis of his supervisory authority, because the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). For these reasons, the complaint states no claim against Defendant Herrington.

In addition, dissatisfied as Plaintiff may be about Defendant Herrington's failure

to take any action against Defendant Quall for "forging" Plaintiff's signature on the inventory document, this inaction did not violate the Constitution. Plaintiff has no constitutional right to demand that criminal charges, or even a criminal investigation, be brought against a prison guard or any other individual. *See generally Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (holding that private citizens cannot compel enforcement of criminal law). Similarly, he has no constitutional right to demand that the prison warden take any disciplinary action against an employee. This claim, as well as all other claims against Defendant Herrington, shall be dismissed with prejudice.

**Disposition**

**DEFENDANT HERRINGTON** is **DISMISSED** with prejudice, as are all claims against him, for failure to state a constitutional claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff's claims designated in the complaint as **"Claim II"** and **"Claim III,"** which are unrelated to the claims remaining in this action against Defendant Quall, are **SEVERED** into a new case. That new case shall include:

> 1) Claims against **DEFENDANTS OLSON and WILLIAMS** for retaliation and possible interference with access to the courts (**"Claim II"** in the complaint); and
>
> 2) Claims against **DEFENDANTS BAKER, MILLS and WILLIAMS** for deliberate indifference to medical needs, and retaliation (**"Claim III"** in the complaint);

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings. In the new case, the Clerk is **DIRECTED** to file the following documents:

>  (1)   This Memorandum and Order
>  (2)   The Original Complaint (Doc. 1)
>  (3)   Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)
>  (4)   Plaintiff's notice of temporary change of address (Doc. 6)
>  (5)   The Prisoner Trust Fund Account Statement (Doc. 7)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the

newly-opened case, he must notify the Court in writing within 35 days (on or before October 21, 2014). Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional filing fee** of $350.00.[4] No service shall be ordered on any Defendants in the severed case at this time. As noted above, if Plaintiff chooses to go forward with the severed case, it shall then be transferred to the Central District of Illinois for a merits review pursuant to 28 U.S.C. § 1915A and for a ruling on Plaintiff's request to proceed *in forma pauperis*.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNTS 1 and 2 against Defendant QUALL*, for denial of access to the courts and for retaliation. This case shall now be captioned as: **HENRY L. MACK, Plaintiff, vs. OFFICER QUALL, Defendant.**

**IT IS FURTHER ORDERED** that Defendants **WILLIAMS, OLSON, BAKER, and MILLS** are **TERMINATED** from *this* action with prejudice.

As to **COUNTS 1 and 2** against Defendant Quall, which remain in the instant case, the Clerk of Court shall prepare for Defendant **QUALL:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the

---

[4] If Plaintiff's request to proceed *in forma pauperis* ("IFP") in the severed case should be denied, the filing fee would total $400.00. Litigants who are denied leave to proceed IFP are assessed an additional $50.00 administrative fee. *See* Judical Conference Schedule of Fees - District Court Miscellaneous Fee Schedule, 28 U.S.C. § 1914, No. 14.

extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28

U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 16, 2014**

**s/ MICHAEL J. REAGAN**
**U.S. District Judge**